UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DENNIS BOTHEL, # 464266,

                 Petitioner,                         Case No. 16-cv-13718

v                                         Honorable Thomas L. Ludington

JEFFREY WOODS,

                 Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO
APPEAL IN FORMA PAUPERIS**

Petitioner Dennis Bothel, a state prisoner, seeks habeas corpus relief under 28 U.S.C. §

2254. Petitioner Bothel is serving concurrent sentences of 8 to 20 years for first-degree home

invasion and 6 to 10 years for assault with intent to commit great bodily harm after he was

convicted by a jury in Macomb County Circuit Court. His current petition raises nine claims: (1)

the trial court failed to instruct the jury on lesser offenses, (2) a mistrial should have been

declared after the prosecutor erroneously accused Petitioner of presenting false evidence, (3) the

prosecutor suppressed evidence of the victim's medical records and criminal history, (4)

insufficient evidence was presented to sustain the convictions, (5) Petitioner's trial counsel was

ineffective during the plea bargaining process, (6) Petitioner's right to confront witnesses was

violated by limitations placed on his cross examination of a prosecution witness, (7) Petitioner's

trial was rendered unfair by the introduction of irrelevant evidence, (8) Petitioner was denied the

effective assistance of counsel at trial, and (9) Petitioner can establish cause and prejudice to

excuse his procedural defaults. Bothel's petition will be denied because his claims are without

merit or barred by his state court procedural default. Petitioner will be also be denied a certificate of appealability and denied permission to proceed on appeal in forma pauperis.

## I.

## A.

Petitioner Bothel's state court conviction arose out of an incident that occurred in the home of Michael Dzikowski in the early morning hours of April 2, 2011. At the jury trial commencing on March 28, 2012, Dzikowski testified that he was Petitioner's neighbor in Clinton Township. *See* Trial Tr. 140, ECF No. 9-3. Dzikowski further testified that he had an ongoing affair with Petitioner's wife, Nicole Williams. *Id*. at 142-43. According to the testimony of Starla Weissinger, a mutual friend of Dzikowski and Petitioner, Petitioner was informed of the affair in October of 2010 by Ms. Weissinger. *Id*. at 201.

Two days before the April 2, 2011 incident, Dzikowski testified that he intervened in a physical altercation between Petitioner and Ms. Williams. *Id*. at 143. Then, on April 1, 2011, Petitioner told Ms. Weissinger that he was going to kill Dzikowski. *Id*., at 205.

On the night of the incident, Dzikowski testified that he returned home from Lipsticks Bar and Grill and fell asleep on his couch. *Id*., at 144. He woke up when someone struck him in the head with a hammer. *Id*. at 144-45. Dzikowski allegedly rolled off the couch, and grabbed the assailant's ankles. *Id*. at 145. The assailant said, "[t]hat's what you get for sleeping with my wife" as he fled the scene. *Id*. Dzikowski testified that he recognized Petitioner as the man who assaulted him. *Id*. at 148.

According to Ms. Weissinger, Petitioner attempted to contact her multiple times at around three o'clock in the morning. *Id*. at 206-07. After Ms. Weissinger answered the phone, Petitioner asked Ms. Weissinger to be his alibi for the assault, and to report that he had gone up

north. *Id*. at 208. Petitioner admitted to her that he hit Dzikowski in the head with a hammer as he was sleeping on a couch, and had told Dzikowski, "that's what you get for sleeping with my wife." *Id*. at 208-10. Petitioner also told her that he had attempted to look through Dzikowski's cell phone. *Id*.

Meanwhile, after Petitioner left, Dzikowski testified that he crawled to his neighbor's house. The neighbor then called 9-1-1. *Id*. at 148. Dzikowski was transported to a hospital, where he required nine staples to close a gash on the back of his head. *Id*. at 149, 153, 168.

Upon returning home from the hospital, Dzikowski found that his cell phone was missing. *Id*. at 154. He testified the he used his mother's phone to call his phone, and that Petitioner answered. *Id*. at 155-56. Dzikowski demanded the return of his phone, after which Petitioner drove up to Dzikowski's house and threw the phone at him from his car. *Id*. at 156-57. Dzikowski testified that Petitioner was armed with a metal pipe at the time. *Id*. at 156.

Dzikowski's brother Steven testified that before Petitioner returned the phone, Petitioner used Dzikowski's phone to call him. According to Steven, Petitioner left a voice message asking if he was "doing the same thing" – presumably sleeping with Petitioner's wife – and whether Steven wanted "the same thing to happen to [him,]" – presumably, being attacked like Dzikowski. *Id*. at 187-90.

At trial, Petitioner attempted to defend against the charges by arguing that he was not the assailant, and that Dzikowski and the other witnesses were lying because they disliked him. *See* Tr. 83-90, ECF No. 9-4. The jury apparently rejected this defense, and found Petitioner guilty of one count of first-degree home invasion in violation of Michigan Compiled Law § 750.110a(2), and one count of assault with intent to commit great bodily harm in violation of Michigan

Compiled Law § 750.84.  On May 8, 2012 Petitioner was sentenced to 8 to 20 years on count

one, and 6 to 10 years on count two, to run concurrently. *See* Sentencing Tr. 20-21, ECF No. 9-5.

**B.**

Following sentencing, Petitioner filed a claim of appeal. His appellate counsel filed a

brief in the Michigan Court of Appeals raising the following claims:

I.    Did the trial court abuse its discretion and violate Defendant's rights to
      due process of law and a fair trial in refusing to instruct the jury on lesser
      included offenses of entry without breaking, entry without permission,
      felonious assault, aggravated assault and assault where there was
      evidentiary support for those lesser offenses?

II.   Did the trial court err in denying Defendant's motion for mistrial based
      upon police and prosecutorial misconduct in falsely accusing Defendant of
      forgery and fraud upon the court, causing Defendant to file a grievance
      against the prosecutor, thereby depriving Defendant of a fair trial and due
      process of law, constituting manifest injustice?

III.  Did the prosecutor fail to disclose and promptly produce discovery of the
      medical and criminal records of the complaining witness, necessary for an
      effective cross-examination of the complaining witness? Was this failure
      compounded by the serious mistake of defense counsel in failing to
      formally move for the production of these records? Did the combined
      malfeasance deprive Defendant of due process and a fair trial?

IV.   Was there insufficient evidence that Defendant had committed a home
      invasion or an assault with intent to do great bodily harm in violation of
      Michigan law and the Due Process Clause of the Michigan and United
      States Constitutions, which require sufficient evidence to convict a
      Defendant of a criminal offense?

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion.

*People v. Bothel*, No. 310900, 2013 WL 6331732 (Mich. Ct. App. Dec. 5, 2013).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme

Court, raising the same claims. He also added a claim that appellate counsel was ineffective for

combining a prosecutorial misconduct and ineffective assistance of counsel claim under a single

argument heading (claim III). Finally, he added an additional claim that his counsel was

ineffective during the plea bargaining stage. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Bothel*, 845 N.W.2d 493 (Mich. 2014) (Table).

Petitioner then returned to the trial court and filed a motion for relief from judgment, raising the following claims:

I.      Did the trial court violate Defendant's right of confrontation and cross-examination, where he sought to question prosecution witness Starla Weissinger about a criminal complaint Defendant filed against her and her boyfriend which may have affected the witness's bias, interest or motive to testify falsely. US Const, Ams V, VI; Const 1963, Art I § § 17, 20?

II.     Was Mr. Bothel denied due process when the prosecution introduced a plethora of irrelevant and unduly prejudicial evidence of other bad acts at his trial; and trial counsel was ineffective for failing to object?

III.    Was Defendant deprived of his right under the Sixth Amendment to the United States Constitution and under § 20 Article 1, of the Michigan Constitution 1963 to the effective assistance of defense counsel.

IV.    Should the court grant relief from judgment because the Defendant can establish good cause for not bringing his appellate issue before the court previously and actual prejudice due to trial and appellate counsel's ineffectiveness?

In an opinion dated December 12, 2014, the trial court denied the motion for relief from judgment, finding that review of Petitioner's claims was barred because he had failed to demonstrate good cause for failing to raise the instant issues on appeal, as required by Michigan Court Rule 6.508(D)(3)(a), and because the court did not conclude that there was a significant possibility that Petitioner was innocent of the subject crimes. *See* Op. & Ord. at 4, ECF No. 9-8.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, attempting to raise the same claims raised in the motion for relief from judgment. The Michigan Court of Appeals denied the application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D)." *People v. Bothel*, No. 148496

(Mich. Ct. App. Nov. 4, 2015). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, but it was also denied with citation to Rule 6.508(D). *People v. Bothel*, 884 N.W.2d 571 (Mich. 2016) (Table). Petitioner now brings the present petition for habeas corpus relief.

## II.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is contrary to Supreme Court precedent under § 2254(d)(1) if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or (2) " the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). A state court adjudication involves an unreasonable application of federal law under § 2254(d)(1) if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (internal quotation marks omitted).

"In order for a federal court to find a state court's application of [Supreme Court] precedent unreasonable, the state court's decision must have been more than incorrect or erroneous," but rather "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotations and citations omitted):

> [E]ven clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations, quotation marks, and alterations omitted). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). Rather, the pertinent question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (internal quotation marks omitted).

### A.

In his first claim for relief, Petitioner argues that the trial court abused its discretion by failing to instruct the jury on the lesser offenses of entry without breaking, entry without permission, simple assault, felonious assault, and aggravated assault. He asserts that the jury was

deprived of the opportunity of considering these more minor offenses, and instead was forced to make an all-or-nothing choice of the serious felonies for which he was convicted. In reviewing this claim, the Michigan Court of Appeals found that none of the lesser offense instructions was required under Michigan law. *Bothel*, 2013 WL 6331732 at *2-5.

Petitioner's claim cannot form the basis for granting habeas relief because it is not supported by clearly established Supreme Court law. The United States Supreme Court has declined to determine whether the Due Process Clause requires a state trial court to instruct a jury on a lesser included offense in a non-capital case. See *Beck v. Alabama*, 447 U.S. 625, 638, n. 4 (1980). A state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case therefore cannot run contrary to, or amount to an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id.*; See also *David v. Lavinge*, 190 F. Supp. 2d 974, 986, n. 4 (E.D. Mich. 2002). The Sixth Circuit has interpreted *Beck* to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F. 3d 531, 541 (6th Cir. 2001). The failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is thus not an error cognizable in federal habeas review. *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir. 1990); *see also Scott v. Elo*, 302 F. 3d 598, 606 (6th Cir. 2002).

Even though first-degree home invasion can result in a life sentence, Petitioner was not facing a capital conviction within the meaning of *Beck* that would entitle him to a jury instruction on any lesser included offenses. In *Scott v. Elo*, the Sixth Circuit held that a criminal defendant who had been convicted of first-degree murder in Michigan and had been sentenced to life imprisonment without parole was not entitled to habeas relief based upon the trial court's failure to instruct on the lesser offense of involuntary manslaughter. 302 F. 3d at 606. In so ruling, the

Sixth Circuit characterized the defendant's first-degree murder charge as a conviction for a non-capital offense. *Id.* Accordingly, Petitioner's claim that he was entitled to lesser offense instructions in his non-capital case does not present a cognizable claim for relief under section 2254(d).

## B.

In his second claim, Petitioner argues that he was deprived of a fair trial due to judicial bias. Petitioner asserts that during trial the trial court appeared to concur with the prosecutor's assertion that Petitioner had falsified a ticket issued against the victim. In fact, Petitioner had made a police report with the Roseville City Attorney against the victim, and that the ticket was not a forgery. *See* Trial Tr. 4-9, ECF No. 9-4.

The Michigan Court of Appeals denied the claim as follows:

Upon review of the record, contrary to defendant's claims, the trial court's conduct does not demonstrate that it lacked impartiality. Instead, the trial court, recognizing that the formatting of the ticket appeared to be improper because it lacked a signature from an officer, appropriately allowed the prosecutor to further investigate the matter. Further, the entire discussion of this ticket occurred outside the presence of the jury. Thus, had the prosecutor engaged in misconduct by accusing defendant of producing a forged document in court, defendant did not suffer prejudice as a result. Therefore, defendant is not entitled to reversal on his claim of prosecutorial misconduct, and the trial court did not abuse its discretion in denying his motion for a mistrial.

*Bothel*, 2013 WL 6331732 at *5.

This decision did not constitute an unreasonable application of clearly established Supreme Court law. The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181(1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37 (2012) (confirming that *Donnelly/Darden* is the proper standard). With respect to the claim of prosecutorial misconduct, the claim fails for the obvious reason that the allegations and subsequent discussion occurred outside the presence of the jury. *See* Trial Tr. 214-21, ECF No. 9-3. Thus, the prosecutor's comments could not have infected the trial with unfairness.

Petitioner's judicial bias argument fairs no better. A defendant has a right to a trial before an impartial judge. *Tumey v. Ohio*, 273 U.S. 510, 535 (1927). However, comments that do not exhibit favoritism or antagonism for a party are insufficient to establish judicial bias. See *Liteky v. United States*, 510 U.S. 540, 555 (1994). Indeed, "expressions of impatience, dissatisfaction, annoyance, and even anger" are insufficient to show bias. *Id.* at 555-56. When the prosecutor objected to Defendant's proffer of the ticket, the trial court indicated that the matter should be explored as it appeared that the defense was offering a forged document in court. The allegation had prima facie validity because the ticket was unsigned and written on a discontinued format. The next trial day, after the matter was investigated by the prosecutor and officer in charge, it was determined that the city attorney had improperly drafted the ticket and that the ticket had not been served on the victim. Trial Tr. 219-21, ECF No. 9-3. At that point the matter was dropped, and there is nothing in the record to suggest that the incident affected the trial court's impartiality. *Id.* Accordingly, the record does not support Petitioner's claim that the trial court was biased. Petitioner's second claim was therefore reasonably adjudicated by the state courts.

## C.

Petitioner's third claim is comprised of two related claims regarding the prosecution's alleged failure to disclose the victim's medical and criminal records. First, Petitioner argues that

he was denied due process and a fair trial by the prosecution's failure to turn over the records, which could have been used to impeach the victim's credibility and thereby undermined the prosecutor's case. Relatedly, Petitioner's asserts that his trial counsel was ineffective for failing to obtain the medical and criminal records of the victim. Each claim will be addressed in turn.

**i.**

Prosecutors may not suppress evidence that is favorable to an accused and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The components of a true *Brady* claim are: (1) evidence that is favorable to the accused, either because it is exculpatory or impeaching; (2) suppression of the evidence by the State, either willfully or inadvertently; and (3) resulting prejudice. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

"*Brady* … applies to relevant evidence in the hands of the police, whether the prosecutors knew about it or not, whether they suppressed it intentionally or not, and whether the accused asked for it or not." *Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir. 2009) (internal and end citations omitted). "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Stated differently, "the materiality standard for *Brady* claims is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Banks v. Dretke*, 540 U.S. 668, 698 (2004) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

After reciting the application constitutional standard governing the suppression of evidence by the prosecutor, the Michigan Court of Appeals rejected Petitioner's claims as follows:

Defendant argues that because Michael denied being under the influence of drugs or alcohol at the time of the incident, disclosure of his medical report would have allowed defense counsel to impeach him. The report would have demonstrated that he had consumed an excessive amount of alcohol and was under the influence of drugs, including cocaine, at the time of the incident. In addition, defendant asserts that this evidence would have demonstrated that Michael was cognitively impaired at the time of the incident, which would have affected his ability to see and experience the events that he testified about. Defendant also claims that had Michael's criminal record been produced, defense counsel could have used this evidence to impeach Michael, which would likely have resulted in defendant's acquittal because Michael was the sole eyewitness and there was no corroborating physical evidence.

Though defendant alleges that the prosecutor failed to produce Michael's entire hospital report in response to his discovery request, he fails to offer proof that the prosecutor had this report. Defendant also merely alleges "on information and belief" that Michael "had a history of impeachable offenses[,]" without offering any proof that this is true or that the prosecutor had this information.

If defendant's assertions are taken as fact—namely, that the prosecutor had Michael's full medical report and criminal record, that defendant could not have obtained this evidence with reasonable diligence, and that the prosecutor suppressed this evidence—defendant failed to show that "a reasonable probability exists that the outcome of the proceedings would have been different." *Lester*, 232 Mich App at 281. While it is true that Michael was the only eyewitness to the incident, Steven Dzikowski, Michael's brother, testified that defendant called him from Michael's phone the morning after the attack and asked if Steven was "doing the same thing"—presumably, sleeping with Nicole Williams, defendant's wife—and whether Steven wanted "the same thing to happen to [him,]"—presumably, being attacked. Further, Weissinger also testified that defendant asked her to be his alibi for Michael's assault and told her that he hit Michael in the head with a hammer and said, "that's what you get for sleeping with my wife." Even if the medical report and criminal record would have impeached Michael, other witnesses corroborated his account of the attack and his claim that defendant was the perpetrator. Accordingly, it is not reasonably probable that the outcome of trial would have been different had the prosecutor produced the documents.

Defendant further argues that the medical report would have demonstrated that Michael exaggerated what was only a minor two-centimeter cut. The medical report, supposedly, would thus indicate that the perpetrator lacked the intent to cause great bodily harm, an element the prosecutor had to prove. However, the jury saw pictures of Michael's injury at trial, and determined the severity of the injury. Therefore, disclosure of Michael's medical report would not likely have changed the jury's mind regarding the severity of the injury.

*Bothel*, 2013 WL 6331732 at *6-7.

This decision did not constitute an unreasonable application of the *Brady* prejudice standard. Even assuming, as the state appellate court did, that the evidence was suppressed, there was no reasonable probability that the outcome of Petitioner's trial would have been more favorable. Petitioner asserts that the medical records and criminal history could have been used to impeach Dzikowski, but the victim admitted that he drank alcohol—specifically two or three beers and two or three shots—on the night of the assault, and that he had taken drugs. Trial Tr. 158-59. ECF No. 9-3. In any event, there was not a reasonably debatable issue as to Petitioner's identity as the perpetrator because he stole and used the victim's cell phone, admitted his involvement to Weissinger, and asked Weissinger to be an alibi witness.

To the extent Petitioner asserts that the medical records would have been useful to demonstrate that the victim was exaggerating the severity of his wound, the physical evidence indicated that the wound was two centimeters long and required staples. *Id.*, at 126. The jury saw photographs of the wound, and so could see and decide for themselves the severity of the injury. *Id.*, at 148-49.

Moreover, even to the extent Dzikowski could have been impeached by his medical or criminal records, the evidence of Petitioner's guilt was otherwise overwhelming. The evidence presented at trial suggested that before the assault Petitioner told Weissinger that he was going to kill the victim, and after the assault he asked her to be his alibi. The evidence also demonstrated that Petitioner stole the victim's phone and made calls from it, including a call to the victim's brother threatening similar acts. In light of the strength of the prosecution's case, it was not objectively unreasonable for the Michigan Court of Appeals to find that Petitioner had failed to demonstrate prejudice under *Brady*.

**ii.**

Petitioner also cannot demonstrate prejudice with regard to his related ineffective assistance of trial counsel claim. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner's counsel was ineffective. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Id*. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial. *Id*.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

Because the state courts rejected this claim on the merits, however, it is beyond the scope of review for this Court to evaluate Petitioner's claim de novo under the *Strickland* standard. The issue here is a narrower one. The question is whether the conclusion reached by the state court falls within the bounds of reasonable adjudications of Petitioner's claims — a substantially higher threshold. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123.

For the reasons stated above, the state courts reasonably adjudicated Petitioner's ineffective assistance of counsel claim. Petitioner's third claim for relief is therefore without merit.

## D.

Petitioner next argues that there was insufficient evidence presented at trial to sustain his convictions. Specifically, he argues that the evidence presented against him was insufficient for a conviction because the prosecution's witnesses were not credible. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson*, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id*. Indeed, the *Jackson* standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535

(6th Cir. 2011). For a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

After reciting the *Jackson* standard, the Michigan Court of Appeals denied Petitioner's claim as follows:

> The prosecutor correctly points out that defendant's arguments on appeal only challenge the credibility of witnesses whose testimony identified defendant as the perpetrator. Because there was ample testimony that identified defendant as the perpetrator, and because this Court leaves questions of witness credibility and the weight to give to a witness's testimony for the jury, viewing the evidence in the light most favorable to the prosecutor, defendant has failed to demonstrate that there was insufficient evidence such that a rational jury could not find defendant guilty of the charged offenses beyond a reasonable doubt.

*Bothel*, 2013 WL 6331732 at *9.

This decision of the state court reasonably applied the clearly established Supreme Court standard. Essentially, Petitioner presented the state court with reasons that a jury should not have believed the victim's testimony and should have acquitted Petitioner. His arguments are akin to what one expects during closing argument. They do not truly challenge the legal sufficiency of the evidence in which the *Jackson* standard requires that the evidence be viewed most favorably to the prosecution. On habeas review, a federal court does not reweigh the evidence or redetermine credibility of the witnesses whose demeanor was observed at trial by the jury. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder … to weigh the probative value of the evidence and resolve any conflicts in testimony." *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992) (citing *Jackson*, 443 U.S. at 319). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003).

Viewing the victim's trial testimony in the light most favorable to the prosecution, the state court decision that sufficient evidence was presented to establish Petitioner's identity was not so insupportable as to fall below the threshold of bare rationality. *Coleman*, 132 S.Ct. at 2065. Petitioner's fourth claim is therefore without merit.

**E.**

Petitioner's remaining claims were not raised on direct appeal. Instead, they were either presented to the state courts in his motion for relief from judgment and the subsequent appeal, or in the case of his fifth habeas claim, presented only to the Michigan Supreme Court following his appeal of right. Respondent contends that review of these claims is barred by Petitioner's failure to raise these claims in the Michigan Court of Appeals during his appeal of right. Because Respondent is correct, Petitioner's remaining claims will be dismissed.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-751 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-480 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means

factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." Mich. Ct. R. 6.508(D)(3)(b)(I).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal "because the defendant failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders did not refer to subsection (D)(3), and they did not mention Petitioner's failure to raise these claims in the Michigan Court of Appeals on direct review as the rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id*.

In the present case, the Macomb County Circuit Court judge explicitly relied on Rule 6.508(D)(3)(a) in rejecting Petitioner's motion for relief from judgment. The court determined that that rule barred review of Petitioner's post-conviction claims, and found that Petitioner "failed to demonstrate good cause for failing to raise the instant issues on appeal. Mich. Ct. R. 6.508(D)(3)(a)." ECF No. 9-8. Therefore, the trial court clearly denied Petitioner's post-

conviction relief based on the procedural grounds stated in Rule 6.508(D)(3). As such, Petitioner's post-conviction claims are procedurally defaulted. See *Ivory v. Jackson*, 509 F.3d 284, 292-293 (6th Cir. 2007); see also *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

Petitioner alleges that his procedural default should be excused because his appellate counsel provided him with ineffective assistance. Petitioner, however, has not shown that appellate counsel was ineffective. It is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the … goal of vigorous and effective advocacy. … Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "The hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-752). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner,"

which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his newly-raised claims in his initial appeal. Appellate counsel filed a substantial appellate brief which raised the first four claims that Petitioner presents in the present habeas petition. Petitioner has not shown that his appellate counsel's strategy in presenting his lead claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated in Respondent's answer to the petition for writ of habeas corpus, none of the claims raised by Petitioner in his post-conviction motion were "dead-bang winners." Succinctly stated, the evidence presented against Petitioner at trial was overwhelming, and he has not shown any probability that the result of his proceeding would have been any different even if his claims had merit. Moreover, Petitioner completely failed to proffer any evidence supporting his claim that his counsel was ineffective during the plea bargaining process. Because the defaulted claims are not "dead-bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. See *McMeans v. Brigano*, 228 F.3d 674, 682-683 (6th Cir. 2000).

Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith*, 477 U.S. at 533. Furthermore, Petitioner has not presented any new reliable evidence to support any assertion of innocence that would allow this Court to consider these claims as a ground for a writ of habeas corpus, in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural-default rule. See *Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because Petitioner has not presented any new reliable evidence that

he is innocent of these crimes, a miscarriage of justice will not occur if the court declined to review the procedurally defaulted claims on the merits. See *Welch v. Burke*, 49 F. Supp. 2d 992, 1007 (E.D. Mich. 1999). In conclusion, Petitioner is not entitled to habeas relief on his remaining claims because they are all procedurally barred from review.

### III.

Before a petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either

that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

**IV.**

Accordingly, it is it is **ORDERED**, that Petitioner Bothel's petition for a writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED**, that a certificate of appealability is **DENIED**.

It is further **ORDERED**, that permission to appeal in forma pauperis is **DENIED**

<div style="text-align: right">

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

</div>

Dated: July 5, 2017

<div style="border:1px solid">

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 5, 2017.

s/Kelly Winslow
KELLY WINSLOW, Case Manager

</div>